UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PRINCETON EXCESS AND SURPLUS LINES INSURANCE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 24-1657 (ABJ) |
| LEXICON TITLE SERVICES, LLC, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

# MEMORANDUM OPINION

Plaintiff Princeton Excess and Surplus Lines Insurance Company ("Princeton Excess") brought this action against Lexicon Title Services, LLC ("Lexicon"), Deidre Brown, Doma Title Insurance, Inc. ("Doma"), and Rehabit DC, LLC ("Rehabit") seeking a declaratory judgment regarding an insurance policy it issued to Lexicon. Compl. [Dkt. # 1] ¶ 1. Doma and Rehabit sued Lexicon and Brown in this court, accusing them of unlawfully taking funds that were supposed to be used to settle a real estate transaction, *see Doma Title Ins., Inc., v. Lexicon Title Servs., LLC*, Civ. Action No. 24-41 (D.D.C. Jan. 5, 2024) ("underlying action"). As Lexicon's professional liability insurer, Princeton Excess attempted to contact Lexicon and Brown numerous times to defend them against Doma and Rehabit's suit, but neither has ever responded. Compl. ¶ 4. In this case, Princeton Excess seeks a declaration that it does not owe Lexicon or Brown a duty to defend or indemnify them in the underlying action because of their failure to assist and cooperate with the investigation and potential defense, as required by the insurance policy. Compl. ¶ 2.

Princeton Excess filed the complaint on June 6, 2024. *See* Compl. Rehabit and Doma were served on July 8, 2024. Return of Serv. Aff. [Dkt. # 5]; Return of Serv. Aff. [Dkt. # 6]. They

filed a motion to dismiss the complaint, Doma & Rehabit's Mot. to Dismiss [Dkt. # 8], which the Court denied.  Mem. Op. & Order [Dkt. # 30].

Lexicon was served with the complaint on June 14, 2024, Return of Serv. Aff. [Dkt. # 9], and Brown was served on October 8, 2024.  Aff. Verifying Serv. [Dkt. # 21].[1]  Neither responded or otherwise entered the suit, and Princeton Excess moved for entry of default against them.  Mot. for Entry of Default [Dkt. # 17]; Mot. for Entry of Default [Dkt. # 24].  The Clerk entered default as to both Lexicon and Brown.  *See* Clerk's Entry of Default as to Lexicon [Dkt. # 19]; Clerk's Entry of Default as to Brown [Dkt. # 25].

Pending before the Court is Princeton Excess's motion for default judgment against Lexicon and Brown, Pl.'s Mot. for Entry of Default & Declaratory J. [Dkt. # 26] ("Mot."), which has been opposed by Doma and Rehabit.  Defs.' Doma & Rehabit's Opp. to Mot. [Dkt. # 27] ("Opp."); Pl.'s Reply to Opp. [Dkt. # 29] ("Reply").

For the reasons stated below, the Court will **GRANT** the motion for default judgment.  The allegations coupled with the documents attached and incorporated in the complaint establish that Lexicon and Brown violated the provision of the insurance policy that required them to cooperate and assist Princeton Excess in investigating and defending the claims brought against them by Doma and Rehabit.  In accordance with the terms of the policy, Princeton Excess is no longer obligated to provide coverage to Lexicon and Brown, and it is not obligated to defend or indemnify them.

---

1    After several failed attempts to serve Brown, Princeton Excess filed a motion requesting that the Court allow it to serve her by alternative means under Federal Rule of Civil Procedure 4(e).  Pl.'s Mot. for Serv. by Alternative Means [Dkt. # 16] at 1–5.  The Court granted the motion, Minute Order (Oct. 2, 2024), and on October 10, Princeton Excess filed an affidavit verifying that it served the complaint and summons on Brown by mail and by affixing a copy to the front door of her address.  Aff. Verifying Serv. [Dkt. # 21].

2

## BACKGROUND

Princeton Excess is an insurance company that issued a "Miscellaneous Professional Liability Insurance Policy" to Lexicon, a limited liability company whose sole member is Deirde P. Brown.  Compl. ¶¶ 4–6, 11  The policy covered the period between May 15, 2023 to May 15, 2024, providing coverage to Lexicon and its partners, officers, and employees "with respect to their activities within the scope of their duties in their capacity as such."  Compl. ¶¶ 11–12; Ex. 1 to Compl. [Dkt. # 1-3] ("Insurance Policy") at 13.  One of the terms of the policy entitled "Assistance and Cooperation" required:

> The Insureds shall cooperate with the Company and provide to the Company all information and assistance which the Company reasonably requests, including:
>
> 1.  Attending hearings, depositions and trials;
>
> 2.  Assistance in effecting settlements;
>
> 3.  Securing and giving evidence;
>
> 4.  Obtaining the attendance of witnesses; and
>
> 5.  Assisting the defense of any Claim covered by this policy.
>
> An Insured will do nothing that in any way increases the Company's exposure under this policy or in any way prejudices the Company's potential or actual rights of recovery.
>
> Failure to cooperate with the Company in the defense of a Claim or in the investigation of a Claim is a breach of this policy and will result in loss of coverage.

Insurance Policy at 13; Compl. ¶ 13.

On February 22, 2024, Princeton Excess received notice from a Certified Insurance Counselor at Acrisure that Lexicon and Brown had been sued by Doma and Rehabit.  Compl. ¶ 16; Ex. 2 to Compl. [Dkt. # 1-4] at 7.  The complaint in the underlying action alleged that Lexicon was a "limited agent for the purposes of issuing title insurance underwritten by Doma," and it

conducted the closing of a property purchased by Rehabit. Ex. 2 to Mot. [Dkt. # 26-2] ("Underlying Compl.") ¶¶ 8, 20. The property that Rehabit purchased was encumbered by a deed of trust for $154,800, and as part of the settlement, Lexicon issued an "ALTA Combined Final Settlement Statement" stating that it used $199,505.60 of the amount tendered by Rehabit to pay off the deed of trust. Underlying Compl. ¶¶ 10–14. But later, the servicer for the deed of trust notified Doma that it was never paid off, and that the balance had accumulated to $250,931.05. Underlying Compl. ¶ 16. Lexicon and Brown had allegedly absconded with the money, and Doma and Rehabit brought suit against them for breach of contract, negligence, fraud, trover and conversion. Underlying Compl. ¶¶ 17, 24–54.

After it was notified of the underlying action, Princeton Excess requested the contact information for Lexicon, and on February 28, 2024, it was provided the office's telephone number, and mailing address, as well as Brown's work email address. Compl. ¶ 16, citing Ex. 2 to Compl. at 2. The same day, Princeton Excess's claims specialist emailed Brown, advising her and Lexicon of the underlying action and requesting a call to discuss the suit. Compl. ¶ 17; Ex. 3 to Compl. [Dkt. # 1-5] at 2. Brown did not answer the email, Compl. ¶ 17, and Princeton Excess made many more attempts made to contact with Brown and Lexicon:

| | |
|---|---|
| Feb. 29, 2024 | Princeton Excess emailed Brown again. Compl. ¶ 18, citing Ex. 4 to Compl. [Dkt. # 1-6] at 2. It also called Lexicon at the number provided and left a voicemail advising it of the lawsuit and requesting a call back to discuss. Compl. ¶ 18. |
| Mar. 5, 2024 | Princeton Excess emailed Brown again. Compl. ¶ 19, citing, Ex. 5 to Compl. [Dkt. # 1-7] at 2. It also called Lexicon and left another voicemail. Compl. ¶ 19. |
| Mar. 14, 2024 | Princeton Excess emailed Brown again. Compl. ¶ 20, citing Ex. 6 to Compl. [Dkt. # 1-8] at 2. It also called Lexicon and left another voicemail. Compl. ¶ 20. Princeton Excess also called and left a voicemail at a phone number it obtained |

4

|  |  |
|---|---|
|  | from www.houzeo.com that it believed may have belonged to Brown or Lexicon. Compl. ¶ 20. |
| Mar. 27, 2024 | Princeton Excess learned that Lexicon had been served with the complaint in the underlying action, and that the deadline to file an answer was April 8, 2024. Compl. ¶ 21. It also learned through a notice in the underlying action that Brown filed for bankruptcy and that her bankruptcy counsel was Cathy Braxton. Compl. ¶ 21. |
| Mar. 28, 2024 | Princeton Excess called Braxton and informed her of the lawsuit against Lexicon and Brown. Compl. ¶ 22. It requested Brown's contact information, but Braxton advised that she would not provide the information without first obtaining consent from Brown. Compl. ¶ 22. Braxton agreed to provide Princeton Excess's contact information to Brown. Compl. ¶ 22. The same day, Princeton Excess forwarded Braxton a copy of the lawsuit via email, and it advised her of the April 8 deadline to respond to the complaint. Compl. ¶ 22, citing Ex. 7 to Compl. [Dkt. # 1-9] at 2. |
| Apr. 1, 2024 | Princeton Excess emailed a Reservation of Rights and Cooperation Notice to Brown and Braxton. Compl. ¶ 23, citing Ex. 8 to Compl. [Dkt. # 1-10] at 2. It also mailed the notice to the address provided for Lexicon. *Id.* at 11. |
|  | The notice advised Lexicon and Brown that additional information was needed in order to answer Doma and Rehabit's complaint by the April 8 deadline. *Id.* at 12. It also explained that "Lexicon's and Ms. Brown's failure to provide information . . . threaten[ed] to prejudice [Princeton Excess]'s ability to investigate and defend the Lawsuit and any associated coverage implications." *Id.* |
| Apr. 2, 2024 | Princeton Excess sent another email to Brown regarding the lawsuit, with a copy to Braxton. Compl. ¶ 24, citing Ex. 9 to Compl. [Dkt. # 1-11] at 2. It also called and left another voicemail for Lexicon. Compl. ¶ 24. |
| Apr. 3, 2024 | Princeton Excess issued a second Reservation of Rights and Cooperation Notice to Brown via email, and to Lexicon via mail. Compl. ¶ 25, citing Ex. 10 to Compl. [Dkt. # 1-12] at 2. It also mailed a copy to the address Brown had listed in her bankruptcy proceeding and to Braxton. Ex. 10 at 13, 27. |

5

| | |
|---|---|
| Apr. 4, 2024 | Princeton Excess emailed Brown and Braxton again, and it called and left another voicemail for Lexicon. Compl. ¶ 26, citing Ex. 12 to Compl. [Dkt. # 1-14] at 2. |
| Apr. 5, 2024 | Princeton Excess emailed Brown and Braxton again, this time requesting a current mailing address and updated contact information for Lexicon and its authorized representative. Compl. ¶ 27, citing Ex. 13 to Compl. [Dkt. # 1-15] at 2. It also called Lexicon again and left a voicemail. Compl. ¶ 27. |
| Apr. 10, 2024 | After Lexicon and Brown were granted an extension of time to answer the complaint in the underlying action, Princeton Excess called Lexicon to inform it about the extension but encountered an automated message stating that the number was temporarily unavailable. Compl. ¶ 28. Princeton Excess then called Braxton and left her a voicemail explaining the extension of time and requesting current contact information for Brown. Compl. ¶ 28. It also emailed Braxton the same. Compl. ¶ 28, citing Ex. 14 to Compl. [Dkt. # 1-16] at 2. |
| Apr. 11, 2024 | Princeton Excess called Lexicon again and got the same automatic message. Compl. ¶ 29. It also emailed Brown to request the current contact information for her or an authorized representative of Lexicon. Compl. ¶ 29. |
| Apr. 16, 2024 | Princeton Excess called Lexicon again and got the same automatic message. Compl. ¶ 30. It also emailed Brown again. Compl. ¶ 30, citing Ex. 15 to Compl. [Dkt. # 1-17] at 2. |
| Apr. 17, 2024 | Princeton Excess mailed its previously issued Reservation of Rights and Cooperation Notice to Lexicon again. Compl. ¶ 31, citing Ex. 16 [Dkt. # 1-18]. |
| Apr. 24, 2024 | Princeton Excess called Lexicon again and got the same automatic message stating the number was unavailable. Compl. ¶ 32. |
| Apr. 25, 2024 | Princeton Excess emailed a third Reservation of Rights and Cooperation Notice to Brown and Braxton, and it mailed a copy to Lexicon's address, Brown's address, and Braxton. Compl. ¶ 33, citing Ex. 17 to Compl. [Dkt. # 1-19] at 2, 16. |

6

| | |
|---|---|
| May 2, 2024 | Princeton Excess called Lexicon and emailed Brown again. Compl. ¶ 34, citing Ex. 18 to Compl. [Dkt. # 1-20] at 2. |
| May 3, 2024 | Princeton Excess called Lexicon and got the same temporarily unavailable message. Compl. ¶ 35. It also issued a fourth Reservation of Rights and Cooperation Notice via email to Brown and via mail to Lexicon's address and Brown's address. Compl. ¶ 35, citing Ex. 19 to Compl. [Dkt. # 1-21] at 2, 17. Princeton Excess did not provide a copy to Braxton because she had advised that she was not representing Brown in the underlying action and did not want to be contacted. Compl. ¶ 35. |
| May 9, 2024 | Princeton Excess emailed Brown to advise her that the Court had again extended the deadline to file the answer in the underlying action, and asked again for contact information for an authorized individual with Lexicon. Compl. ¶ 36, Ex. 20 to Compl. [Dkt. # 1-22] at 2. |
| May 17, 2024 | Princeton Excess called Lexicon again, and it emailed Brown reiterating its request for additional information in order to file a response to the complaint in the underlying action by the June 7 deadline. Compl. ¶ 37, citing Ex. 21 to Compl. [Dkt. # 1-23] at 2.<br><br>It also mailed a fifth Reservation of Rights and Cooperation Notice to Lexicon and to Brown. Compl. ¶ 38, citing Ex. 22 to Compl. [Dkt. # 1-24] at 2. The notice contained a paragraph highlighted in yellow:<br><br>"Please be advised that the Court has extended the deadline to file an Answer to the Lawsuit until June 7, 2024. [Princeton Excess] reiterates that in order to participate in Lexicon's and Ms. Brown's defense and to investigate the Lawsuit, [Princeton Excess] requires additional information from Lexicon and Ms. Brown. This includes, but is not limited to, information necessary to file an Answer to the Lawsuit by the June 7, 2024 deadline. [Princeton Excess] reminds Lexicon and Ms. Brown of their obligation to cooperate with [Princeton Excess] in defense and investigation of the Lawsuit, as set forth more fully below. Lexicon's and Ms. Brown's failure to provide information to [Princeton Excess] threatens to prejudice [Princeton Excess]'s ability to investigate and defend the Lawsuit and any associated coverage implications. To that end, kindly |

7

> contact me immediately . . . during standard business hours . . . ."
>
> *Id.* at 2.  The insurer detailed the attempts it made to get in contact with Lexicon and Brown.  *Id*. at 3–6.  And it concluded:
>
> "[Princeton Excess] agrees to participate in Lexicon Title's defense of the Claim, subject to a complete and full reservation of rights.  [Princeton Excess] reserves its right to withdraw from the defense, with or without seeking a judicial declaration, in the event there are no covered allegations or Lexicon and/or Ms. Brown fail to satisfy the Policy's conditions.  In that circumstance, [Princeton Excess] also reserves the right to limit or deny any duty to indemnify."
>
> *Id.* at 8 (emphasis omitted).

Neither Brown nor anyone else representing Lexicon responded to any of the communications from Princeton Excess.  Compl. ¶ 45.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55(a) provides that the clerk of the court must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Fed. R. Civ. P. 55(a).  After a default has been entered, a court may enter a default judgment order pursuant to Rule 55(b).  Although there is a general "federal policy favoring trial over default judgment," *Whelan v. Abell*, 48 F.3d 1247, 1258 (D.C. Cir. 1995), "when the adversary process has been halted because of an essentially unresponsive party . . . , the diligent party must be protected" by awarding a default judgment. *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 965 (D.C. Cir. 2016) (omission in original), quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) (per curium).

Whether default judgment is appropriate is in the discretion of the trial court. *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980); *Jackson v. Beech,* 636 F.2d 831, 836 (D.C. Cir. 1980). Upon entry of default by the clerk of the court, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002), citing *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971).

"Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain." *Id.*, citing *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001). Accordingly, when moving for a default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested. *Id.* (citation omitted). "In ruling on such a motion, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Id.* (citation omitted).

## ANALYSIS

**I. The Court has subject matter jurisdiction over the suit and personal jurisdiction over defendants Lexicon and Brown.**

As a threshold matter, the Court must determine whether it has jurisdiction over the case. *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (describing the court's "affirmative obligation 'to consider whether the constitutional and statutory authority exist . . . to hear each dispute'").

Here, the Court has subject matter jurisdiction under 28 U.S.C. § 1332. Section 1332 grants district courts "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, . . . and is between . . . citizens of different States." *Id.* Princeton Excess is a Delaware corporation with its principal place of business in New Jersey, Lexicon is a District

of Columbia limited liability company, Brown is a resident of the District, Doma is a South Carolina corporation with its principal place of business in Florida, and Rehabit is a D.C. limited liability company whose sole member is a resident of Maryland. Compl. ¶¶ 5–8. The amount in controversy – that is, the amount Doma and Rehabit seek from Lexicon and Brown in the underlying action that Princeton Excess is seeking to absolve itself from its duty to defend or indemnify – is $250,931.05. Underlying Compl. ¶¶ 11, 16–23. So the case involves the diverse opposing parties and the amount in controversy necessary for subject matter jurisdiction based on diversity.

The Court also has personal jurisdiction over Lexicon and Brown. The Court determines whether personal jurisdiction may be exercised "by reference to District of Columbia law," *United States v. Ferrara,* 54 F.3d 825, 828 (D.C. Cir. 1995), and D.C. Code provides that:

> A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief.

D.C. Code § 13-422. Here, the complaint alleges that "Lexicon is a District of Columbia limited liability company" with its office located in D.C., Compl. ¶ 6; Ex. 2 to Compl. [Dkt. # 1-4] at 2 (showing Lexicon's office address), and that Brown is "a resident of the District of Columbia." Compl. ¶ 6. Therefore, the Court has proper personal jurisdiction over both defendants.

Venue is also proper in this jurisdiction under 28 U.S.C. § 1391(b)(2) as the "judicial district in which substantial part of the events or omissions giving rise to the claim occurred." The underlying action alleges that Lexicon and Brown absconded with proceeds meant to pay off a lien on a property purchased in the District of Columbia, Underlying Compl. ¶¶ 8–17, and the instant action alleges that Lexicon and Brown have failed to cooperate with Princeton Excess's attempts to defend them against a suit in the District of Columbia. Compl. ¶¶ 1–4.

Finally, service was properly effected on both defendants. Lexicon was served via an authorized agent under Federal Rule of Civil Procedure 4(h)(1)(B), Return of Serv. Aff. [Dkt. # 9], and Brown was served by alternative means pursuant to this Court's order under Federal Rule of Civil Procedure 4(e) and District of Columbia Superior Court Rule of Civil Procedure 4(e)(3). Aff. Verifying Serv. [Dkt. # 21]

## II.   Default judgment is appropriate, and plaintiff is entitled to a declaration that it is has no duty to defend or indemnify Lexicon and Brown.

Next, the Court determines whether default judgment is appropriate and the extent of the defendant's liability.

"To warrant a default judgment, the defendant must be considered a totally unresponsive party, and its default plainly willful, reflected by its failure to respond to the summons and complaint, the entry of a default, and the motion for a default judgment." *Teamsters Local 639-Emps. Health Tr. v. Boiler & Furnace Cleaners, Inc.*, 571 F. Supp. 2d 101, 107 (D.D.C. 2008) (internal quotation marks omitted). Neither Lexicon or Brown has filed a responsive pleading in this case and neither has requested additional time to do so. They have not moved to set aside the entry of default and they have advanced no "suggestion . . . that [they] ha[ve] a meritorious defense." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008). Therefore, the Court concludes that default judgment is appropriate.

At the default judgment stage, the Court takes the well-pleaded factual allegations in the complaint as true to determine liability, *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 67 (D.D.C. 2011), and here, the allegations establish Princeton Excess's right to a declaration that it has no duty to defend or indemnify Lexicon or Brown in the underlying action.

"An insurance policy is a contract between the insured and the insurer," and under District of Columbia law, "when such contracts are clear and unambiguous, they will be enforced by the courts as written, so long as they do not violate a statute or public policy." *Travelers Indem. Co. of Illinois v. United Food & Com. Workers Int'l Union*, 770 A.2d 978, 986 (D.C. 2001). The insurance policy in this case required Lexicon and Brown to "cooperate" and "provide" Princeton Excess with "all information and assistance which the Company reasonably requests," including: attending hearings, depositions, and trials; assistance in effecting settlements; securing and giving evidence; obtaining the attendance of witnesses; and assisting the defense of any claim under the policy. Insurance Policy at 13. And it was unambiguous that, "[f]ailure to cooperate with the Company in the defense of a Claim or in the investigation of a Claim is a breach of this policy and will result in the loss of coverage." *Id*.

The allegations establish that neither Lexicon or Brown ever attempted to cooperate or provide Princeton Excess with the information or assistance necessary to defend the claims brought by Doma and Rehabit in the underlying action. The record is packed with exhibits showing Princeton Excess's multiple attempts to contact Lexicon and Brown to discuss the suit; warnings that additional information was needed to enable the insurer to answer the underlying complaint; reminders that the insurance policy obligated Lexicon and Brown to cooperate in the defense and investigation of the suit; and finally, communications highlighting the fact that continued silence would result in a loss of coverage. None of the insurer's calls, letters, or emails were ever answered, and Lexicon and Brown did not otherwise help Princeton Excess, so under the terms of the insurance policy, the result is loss of coverage. *See Akers v. Liberty Mut. Grp.*, 847 F. Supp. 2d 21, 25 (D.D.C. 2012) ("[A]n insured party's failure to cooperate with the insurer in investigating

12

an insurance claim has been held to be a material breach of the contract, rendering the policy void.").

Doma and Rehabit, the plaintiffs in the underlying action who stand to lose the availability of insurance proceeds to satisfy any judgment they obtain, advance several arguments against default judgment. First, citing *Mora v. Lancet Indem. Risk Retention Grp., Inc.*, 773 Fed. Appx. 113 (4th Cir. 2019), they contend that Princeton Excess must prove that Lexicon and Brown's lack of cooperation will prejudice its defense in order to overcome its duty to defend. *See* Mot. at 1 (adopting the arguments asserted in Doma and Rehabit's motion to dismiss the complaint); Mem. in Supp. of Doma & Rehabit's Motion to Dismiss [Dkt. # 8-1] ("Mot. to Dismiss") at 6–8. But there are several flaws with that contention. For one thing, *Mora* is a non-binding decision from another Circuit that applied Maryland law to the question of whether the insurance company was prejudiced by the insured's refusal to cooperate in the defense of a malpractice claim. *Mora*, 773 Fed. Appx. at 119. More importantly, the reason the court looked at prejudice in that case was because the insurance policy at issue stated: "[a]ny failure of the Insured to cooperate that prejudices our ability to defend any Claim, shall void this Policy." *See id.* (quoting the insurance policy). The policy here states simply that "[f]ailure to cooperate with the Company in the defense of a Claim or in the investigation of a Claim is a breach of this policy and will result in loss of coverage." Insurance Policy at 13.

District of Columbia law is not particularly clear about whether an insurance company is required to prove that the insured's non-cooperation is prejudicial in order to overcome the duty to defend. In *Coleman v. Aetna Ins. Co.*, 309 A.2d 306 (D.C. 1973), the District of Columbia Court of Appeals held that the insured breached the insurance policy's cooperation clause by failing to show up to trial when his "testimony was vital to the defense." *Id.* at 308. It observed

that the absent insured "substantially prejudice[d] [the insurer's] attempt to defend against liability," but it did not announce a requirement that prejudice must be present in every case. *Id.* In *Asal v. Mina*, 247 A.3d 260 (D.C. 2021), the court rejected the insurer's argument that it would not owe any proceeds under its policy to a plaintiff that secured judgment against the insured until after litigation ended because only then could it determine whether the insured fully complied with the policy's cooperation clause. *Id.* at 283–84. The court noted along the way that the insurer had "neither alleged nor provided evidence of any alleged non-cooperation by the [insured], let alone any prejudice stemming from that non-cooperation," *id.* at 284, but that observation hardly rises to a directive that prejudice must always be shown.

Here, unlike in *Asal*, there is ample evidence of a lack of cooperation on the part of Lexicon and Brown. And even if one treats prejudice as a requirement, the factual allegations here establish that Lexicon and Brown's lack of cooperation prejudiced Princeton Excess's ability to defend them. The underlying action accuses Lexicon and its "sole member" Brown of absconding with funds that were meant to pay off a deed of trust on a property. Underlying Compl. ¶¶ 4, 12–16. Without any communication from either of the parties allegedly involved in the unlawful conduct, Princeton Excess has no information that would enable it to admit or deny the allegations consistent with the Federal Rules of Civil Procedure, and it lacks sufficient knowledge to raise any appropriate defenses; in short, it lacks the access and information that is "vital" to the defense. Therefore, any defense Princeton Excess could offer on behalf of Lexicon or Brown has been prejudiced by their refusal to respond. *See Thomas v. Otis*, 199 F. Supp. 1, 3 (D.D.C 1961) (explaining that the presence and testimony of the defendant, who caused the car accident that

14

gave rise to the suit, "was vital" and that it was "evident" that "the deprivation of his presence was prejudicial").[2]

Second, Doma and Rehabit argue that Princeton Excess must prove that it used methods reasonably calculated to find the insured, and that Lexicon and Brown were willfully or intentionally non-cooperative. Mot. to Dismiss at 5–6. But they cite no binding authority that either of those elements are required before an insurer can be relieved of the duty to defend or indemnify. And the one case they did cite, *Stevens v. United General Title Ins. Co.*, 801 A.2d 61 (D.C. 2002), had nothing to do with non-cooperation. The issue in that case was whether the claim against the insured fell within a policy term that excluded from coverage any matters "created, suffered, assumed or agreed to by the insured claimant," and it was in that context that the D.C. Court of Appeals stated that "the words 'created . . . by the insured claimant' generally have been defined to reflect conscious and deliberate or intentional conduct." *Id.* at 66–69. That is not at all applicable to the instant case.

Finally, Doma and Rehabit argue that the Supreme Court's decision in *Frow v. De La Vega*, 82 U.S. 552 (1872), "prevent[s] default judgment as premature." Opp. at 7–9. *Frow* does not. In that case, the plaintiff alleged that eight defendants jointly conspired to defraud him of the title to a tract of land, and the lower court entered default judgment against the one defendant who did not timely answer the complaint. *Frow*, 82 U.S. at 552–53. The seven other defendants continued on

---

2   Doma and Rehabit also argue that the Court must consider prejudice when deciding "whether a default should issue under Rule 55." Opp. at 9. But the cases it cited in support of that proposition were all dealing with motions to set aside default judgment under Federal Rule of Civil Procedure 55(c), not whether to grant a motion for default judgment. *See Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Hamilton Park Health Care Ctr., Ltd*, 304 F.R.D. 65, 70 (D.D.C. 2014); *Essroc Cement Corp. v. CTI/D.C., Inc.*, 263 F.R.D. 17, 18–19 (D.D.C. 2009). While the standard for a motion to set aside requires the Court to consider whether "a set-aside would prejudice the plaintiff," *Keegel*, 627 F.2d at 373, no such motion has been made in this case.

in litigation and prevailed, and the result "was two irreconcilable judgments: according to the default decree, the plaintiff held title; under the judgment on the merits, the seven other defendants did." *Whelan v. Abell*, 953 F.2d 663, 674 (D.C. Cir. 1992), citing *Frow*, 82 U.S. at 554.  The Supreme Court reversed, holding that "where a bill makes a joint charge against several defendants . . . a final decree on the merits against the defaulting defendant alone" cannot stand. *Frow*, 82 U.S. at 554.

The D.C. Circuit has construed *Frow* "narrowly to hold that in cases involving multiple defendants, a default order that is inconsistent with a judgment on the merits must be set aside only when liability is truly joint – that is, when the theory of recovery requires that all defendants be found liable if any one of them is liable – and when the relief sought can only be effective if judgment is granted against all." *Whelan v. Abell*, 953 F.2d 663, 674–75 (D.C. Cir. 1992), citing *Carter v. District of Columbia*, 795 F.2d 116, 137 (D.C. Cir. 1986).  Here, Lexicon and Brown's "liability" is not at all intertwined with Doma and Rehabit.  The instant complaint seeks declaratory relief for violation of an insurance policy issued by Princeton Excess to Lexicon and Brown, which has nothing to do with Doma and Rehabit, other than the fact that they are the parties adverse to Lexicon and Brown in an action arguably covered by the policy.  Doma and Rehabit were named as defendants in this suit only "as parties potentially interested in the declaratory relief sought," Compl. ¶ 3, and there will be no inconsistent judgments that would make *Frow* applicable here. *See Carter*, 795 F.2d at 138 ("[T]he venerable *Frow* case should not be extended to a context for which it was never intended.").

## CONCLUSION

For the reasons stated above, plaintiff's motion for default judgment against defendants Lexicon and Brown [Dkt. # 26] will be **GRANTED**.

A separate order will issue.

                                                   AMY BERMAN JACKSON
                                                   United States District Judge

DATE: February 10, 2026